# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MELVIN TAYLOR and DIANA E. TAYLOR,

       Plaintiffs,

vs.                                      No. CIV 14-0989 JB/CG

L&P BUILDING SUPPLY OF LAS CRUCES,
INC., individually and as successor-in-interest
to L&P Building Supply; AMERICAN
OPTICAL CORPORATION; CERTAINTEED
CORPORATION; GEORGIA PACIFIC
CORPORATION; HONEYWELL
INTERNATIONAL, INC., f/k/a Allied Signal
Inc., individually and as successor-in-interest to
the Bendix Corporation; KAISER GYPSUM
COMPANY, INC.; UNION CARBIDE
CORPORATION; and KEENAN SUPPLY
DIVISION,

       Defendants.

## <u>MEMORANDUM OPINION AND AMENDED ORDER</u>[1]

**THIS MATTER** comes before the Court on: (i) L&P Building Supply of Las Cruces Inc.'s Motion for Default or Rule 1-102(C) Motion for Judgment on the Pleadings or in the Alternative Summary Judgment and for Counterclaim Damages, and Motion for Summary Judgment Against Plaintiffs and Dismissal, filed in state court on October 30, 2014, filed in federal court November 19, 2014 (Doc. 19-14)("State Motion for Default Judgment"); and (ii) L&P Building Supply of Las Cruces Inc.'s Motion for Default Judgment on Counterclaims [Doc.

---

[1]The Court entered an Order, filed August 21, 2015 (Doc. 87)("Order"), denying L&P Building Supply of Las Cruces Inc.'s Motion for Default Judgment on Counterclaims [Doc. 19-5] of Wrongful Joinder.  The Court stated that it would "at a later date issue a memorandum opinion more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

19-5] of Wrongful Joinder, filed January 13, 2015 (Doc. 56)("Motion").[2]   The Court held a hearing on the Motion and the State Motion for Default Judgment on February 13, 2015.  The primary issue is whether the Court has supplemental jurisdiction over L&P Building Supply of Las Cruces Inc.'s Counterclaim, see L&P Building Supply of Las Cruces Inc.'s Answer to Plaintiffs' First Amended Complaint & Counterclaims at 1, filed in federal court November 19, 2014 (Doc. 19-5)("Answer"), when it is a state law claim between parties of the same state.  The Court concludes that it lacks subject-matter jurisdiction over L&P Supply's counterclaim, because the counterclaim and Plaintiff Diana E. Taylor's underlying claims do not arise from the same common nucleus of operative facts.  Because the Court cannot remand the Counterclaim to state court without remanding the entire case, it dismisses L&P Supply's Counterclaim without prejudice to allow L&P Supply to raise it in state court.

## PROCEDURAL BACKGROUND

Plaintiffs Melvin Taylor and Diana Taylor filed this action in state district court on October 31, 2013.[3]   See Plaintiffs' Complaint for Personal Injury, filed in federal court November 19, 2014 (Doc. 19-1)("Complaint").  D. Taylor, M. Taylor's wife, contends that L&P placed asbestos-containing product -- drywall mud -- into the stream of commerce, where it eventually harmed M. Taylor.  See Complaint ¶¶ 32-37, at 8-11.  The Taylors are New Mexico

---

[2]L&P Supply also filed a motion for default judgment in state court.  See State Motion for Default Judgment at 1.  Because the state court motion presents the same arguments as L&P Supply's federal motion, the Court discusses only the federal motion, but in its Amended Order, addresses them both and dismisses them both.

[3]D. Taylor now litigates the action individually and as personal representative of M. Taylor's estate.  See Suggestion of Death Upon the Record Pursuant to FRCP 25, filed November 12, 2014 (Doc. 12).  Although both M. Taylor and D. Taylor filed the action, the Court will refer to the sole Plaintiff as "D. Taylor."

citizens who resided in New Mexico when they filed the Complaint.  See Complaint ¶ 1, at 1.

L&P is a New Mexico corporation.  See Complaint ¶ 2, at 1; Answer at 1.

The Taylors allege five state-law causes of action.  First, they argue that L&P Supply and

the other defendants negligently "manufactured, sold, installed, removed, and/or otherwise

placed into the stream of commerce as well as into Plaintiff MELVIN TAYLOR's immediate

breathing zone, asbestos, asbestos-containing products, and/or machinery requiring or calling for

the use of asbestos."  Complaint ¶ 32, at 8.  They assert that the Defendants' negligence caused

M. Taylor to suffer "serious injuries and damages, including pain and suffering, mental anguish

and distress, physical impairment, disfigurement, medical expenses, loss of earnings, [and] loss

of enjoyment of life, for which Plaintiff MELVIN TAYLOR seeks relief under New Mexico

law."  Complaint ¶ 35, at 11.  Second, the Taylors claim that the Defendants are strictly liable for

M. Taylor's asbestos-related injuries.  See Complaint ¶ 42, at 13.  Third, the Taylors allege that

L&P Supply "is liable as a successor-in-interest for the conduct and products of L&P Building

Supply."  Complaint ¶ 51, at 14.  Fourth, the Taylors argue that the Court should hold all the

Defendants "jointly and severally liable for all damages to the extent allowed under New Mexico

or other applicable law."  Complaint ¶ 55, at 14.  Finally, the Taylors make a loss of consortium

and services claim, asserting that D. Taylor suffers from the emotional distress from "the loss of

companionship, society, comfort, support, aid and protection resulting from the acts and

omission of Defendants."  Complaint ¶ 58, at 15.  The Taylors allege no federal causes of action.

L&P Supply answered the Complaint on December 18, 2013, denying the allegations and

setting out the affirmative defense of impossibility.  See Answer ¶ 58, at 9.  It argues that "L&P

could not possibly have placed any asbestos product into commerce since it began in the building

supply business nine years after asbestos had been removed from drywall products, and moreover that L&P was not a successor-in-interest to any entity that could."  Motion at 3-4.  It also counterclaimed for wrongful joinder.  See Answer ¶¶ 91-92, at 16.  L&P Supply asserts that the Taylors "knowingly, recklessly or negligently fail[ed] to know or in bad faith named L&P Building Supply of Las Cruces, Inc. as a defendant in this case only for the purpose of defeating federal diversity jurisdiction."  Answer ¶ 91, at 16.

L&P Supply served the Counterclaim on the Taylors on December 18, 2013, but they never answered or otherwise denied the Counterclaim.  See Motion at 4.  On October 30, 2014, L&P Supply moved in state court for default judgment on its Counterclaim, and requested dismissal and Counterclaim damages for wrongful joinder.  See Motion for Default or Rule 1-012(C) Motion for Judgment on the Pleadings or in the Alternative Summary Judgment on Counterclaims of Wrongful Joinder at 8, filed in federal court November 19, 2014 (Doc. 19-14)("State Motion for Default Judgment"). Within one day, the diverse Defendants removed the case to federal court based on the Taylors' alleged wrongful joinder of L&P Supply, the only non-diverse Defendant.  See Notice of Removal of Action to Federal Court at 2, filed in state court on October 31, 2014, filed in federal court November 19, 2014 (Doc. 19-18)("Notice of Removal").  The Taylors never responded to the State Motion for Default Judgment.

On December 23, 2014, D. Taylor filed a new amended Complaint with no claims against L&P Supply.  See Plaintiffs' Complaint for Wrongful Death, Loss of Consortium, Personal Injury and Punitive Damages, filed December 23, 2014 (Doc. 48)("Amended Complaint").  D. Taylor filed a letter to the Court affirming that "L&P was not named as a defendant in Plaintiffs' December 23, 2014 amended complaint."  Letter from Jeffrey A. Kaiser, the Plaintiffs' counsel,

- 4 -

to the Court at 2 (dated December 30, 2014), filed December 30, 2014 (Doc. 53)("Letter").  D. Taylor asserts that, "[b]ecause L&P consented to remove this case during the pendency of its motion, no further action was appropriate unless L&P re-filed the motion in federal court." Letter at 2-3.  Moreover, D. Taylor argues that the wrongful joinder claim is now moot, because L&P Supply is not named in the new Amended Complaint.  See Letter at 3.

On January 13, 2015, L&P Supply filed this Motion asking the Court to enter a default judgment.  L&P Supply asserts that "removal and even dismissal from suit at this late date are not meaningful remedies," and that the "state court judge has noted her jurisdiction on the counterclaim has ended with removal."  Motion at 12.  L&P Supply therefore requests that the Court exercise supplemental jurisdiction to enter default or to remand the Counterclaim to the state district court.  See Motion at 12.

On January 27, 2015, D. Taylor responded to L&P Supply's Motion.  See Plaintiffs' Opposition to L&P Building Supply of Las Cruces Inc.'s Motion for Default Judgment on Counterclaims of Wrongful Joinder, filed January 27, 2015 (Doc. 69)("Response").  D. Taylor argues that "L&P did not even come close to meeting the pleading requirements of NMRA 1-008(A)" in alleging its counterclaim.  Response at 1.  Moreover, D. Taylor asserts that L&P Supply's Counterclaim is permissive and not compulsory, meaning "the Court would not have supplemental jurisdiction over the Counterclaim because it does not operate from a common nucleus of operative facts with Plaintiffs' claims."  Response at 2.  Finally, D. Taylor argues that, "because this case was removed based on diversity jurisdiction, and there is no supplemental jurisdiction, the federal statutes do not authorize partial remand."  Response at 3.  Accordingly, D. Taylor contends that the Court must dismiss L&P Supply's Counterclaim.

On February 3, 2015, L&P Supply replied to D. Taylor's Response.  See Reply to Response to L&P Building Supply of Las Cruces Inc.'s Motion for Default Judgment on Counterclaim at 1, filed February 3, 2015 (Doc. 73)("Reply").  L&P Supply conceded that New Mexico law provides a cause of action for malicious abuse of process, rather than for "fraudulent joinder," as L&P Supply labels the claim in its Answer.  Reply at 7.  Nonetheless, it asserts that the "counterclaim plainly sets out a case for malicious abuse of process under New Mexico law, and contains factual information that makes prevailing on the claim plausible."  Reply at 7-8. L&P Supply also contends that Taylor waived, or is estopped from arguing, that the Court lacks subject-matter jurisdiction.  See Reply at 18.

The Court held a hearing on February 13, 2015.  See Transcript of Hearing (taken February 13, 2015)("Tr.").[4]  The Court indicated it was inclined to deny L&P Supply's motion because it lacked subject-matter jurisdiction. See Tr. at 4:10-13 (Court).  L&P Supply argued that D. Taylor waived her right to raise jurisdictional problems.  See Tr. at 6:8-10 (Rabern).  The Court noted that "jurisdiction is not really something that can be waived."  Tr. at 6:17-18 (Court).  The Court stated that D. Taylor's underlying claims arise from asbestos products making people sick, see Tr. at 9:10-16 (Court), while L&P Supply's Counterclaim arises from D. Taylor's actions in filing the Complaint, see Tr. at 10:1-7 (Court).  L&P Supply could introduce no cases suggesting that district courts could enter default judgment over cases in which they lack subject-matter jurisdiction.  See Tr. at 13:5-14 (Court, Rabern).  Moreover, Taylor noted that in diversity cases, the Court cannot remand the state-law counterclaims while continuing to exercise jurisdiction over the remaining claims.  See Tr. at 22:8-14 (Court, Kaiser).

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

**<u>RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION</u>**

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by [the] Constitution and statute."  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  <u>See</u> 28 U.S.C. §§ 1331 and 1332.

1.    **<u>Supplemental Jurisdiction</u>.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. at 552.  The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966).  Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation lacks any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. <u>See</u> <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 375 n.18 (1978).

Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

### 2.    District Court Discretion.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

- 8 -

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."). At least one other district court in the Tenth Circuit has reached the same

conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").   The Court has stated that, "[i]n circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction."  Krumm v. Holder, No. CIV 08-1056, 2009 WL 1563381, at *14 (D.N.M. May 27, 2009)(Browning, J.)(citing Bonadeo v. Lujan, No. CIV-08-0812, 2009 WL 1324119, at *8 (D.N.M. 2009)(Browning, J.)(citing Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1165).

## RELEVANT LAW REGARDING COUNTERCLAIMS

### 1.    Compulsory and Permissive Counterclaims.

Subject to restrictions that the Federal Rules of Civil Procedure and the limits of federal court jurisdiction impose, a defendant may bring a counterclaim in a pending action, and assert any and all claims that he or she has against the plaintiff.  See Fed. R. Civ. P. 13.  Under rule 13, counterclaims are categorized as either being "compulsory" or "permissive."  Fed. R. Civ. P. 13(a), (b).  A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  See Arch Mineral Corp. v. Lujan, 911 F. 2d 408, 412 (10th Cir. 1990).  A compulsory counterclaim, as distinguished from a permissive counterclaim, must be pled or is barred.  See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974); Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1053 (10th Cir. 1988).

"By and large, the courts have refrained from making any serious attempt to define the

transaction-or-occurrence concept in a highly explicit fashion."   6 CHARLES WRIGHT ET AL.,

FEDERAL PRACTICE & PROCEDURE CIVIL § 1410, at 52 (3d ed. 2010).   "Most courts, rather than

attempting to define the key terms of Rule 13(a) precisely, have preferred to suggest standards by

which the compulsory or permissive nature of specific counterclaims can be determined."   6

WRIGHT, supra § 1410, at 52.   The Tenth Circuit has taken this approach, stating that a

counterclaim is compulsory if: (i) it involves the same issues of law and fact as the principal

claim; (ii) res judicata would bar the defendant from bringing a subsequent suit on the same

claim; (iii) it involves the same evidence as the principal claim; and (iv) there is a logical

relationship between the principal claim and the counterclaim.  See FDIC v. Hulsey, 22 F.3d

1472, 1487 (10th Cir. 1994).

In recognition of the principles of judicial economy that support rule 13, a number of

courts, including the Tenth Circuit, give special weight to the "same evidence" and "claim

preclusion" factors.   Jones v. Ford Motor Credit Co., 358 F.3d 205, 209-10 (2d Cir.

2004)(classifying counterclaim as permissive because the essential facts needed to prove the

principal claim and the counterclaim were not so similar that combining the lawsuits would yield

judicial efficiency); FDIC v. Hulsey, 22 F.3d at 1487 (finding counterclaims compulsory because

res judicata would bar the defendant from bringing a subsequent claim arising out of the same

creditor/debtor relationship and any evidence presented would necessarily encompass the parties'

entire relationship); Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc., 31 F.3d 445, 448

(7th Cir. 1994)(describing the United States Court of Appeals for the Seventh Circuit's test

whether a counterclaim is compulsory as asking "little more than whether the plaintiff's claims

would be barred by res judicata"); Painter v. Harvey, 863 F.2d 329, 332 (4th Cir. 1988)("Where,

as here, the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory.").

>    2.    **Supplemental Jurisdiction Over Counterclaims.**

Before Congress enacted 28 U.S.C. § 1367, courts found that compulsory counterclaims were within the court's supplemental jurisdiction and did not require an independent basis of subject matter jurisdiction.  See 28 U.S.C. § 1367(a); Unique Concepts, Inc. v. Manuel, 930 F.2d 573, 547 (7th Cir. 1991)("A federal court has supplemental jurisdiction over compulsory counterclaims."); Naranjo v. Cnty. of Rio Arriba, 862 F. Supp. 328, 334 (D.N.M. 1994)(Conway, J.).  Rule 13 also permits a party to raise as a counterclaim "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(b).  The permissive counterclaim rule, therefore, allows the court to dispose of all the claims between the parties in one proceeding, irrespective whether the claims all arise from the same transaction or occurrence.  See Baker v. Gold Seal Liquors, Inc., 417 U.S. at  469 n.1.

After Congress passed 28 U.S.C. § 1367, the United States Courts of Appeals for the First, Second, and Seventh Circuits held that, when permissive counterclaims arise out of the same common nucleus of facts as the plaintiff's underlying claims, § 1367 can authorize federal courts to hear permissive counterclaims.  See Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 76 (1st Cir. 2010); Jones v. Ford Motor Credit Co., 358 F.3d at 210-14 ("We conclude that supplemental jurisdiction authorized by 28 U.S.C. § 1367 may be available for the permissive counterclaims, . . . .");  Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 384-87 (7th Cir. 1996).  Other courts have reached the same conclusion.  See Martin v. Law Offices of

John F. Edwards, 262 F.R.D. 534, 536-37 (S.D. Cal. 2009)(Houston, J.)("Permissive counterclaims require an independent basis for subject matter jurisdiction.  When there is no independent basis for jurisdiction . . . , the Court may still exercise supplemental jurisdiction over such claims if they are 'so related to the claims in the action . . . that they form part of the same case or controversy.'" (citations omitted)); Frisby v. Keith D. Weiner & Assocs. Co., 669 F. Supp. 2d 863, 872 (N.D. Ohio 2009)(Gwin, J.)(stating that "the Sixth Circuit, like the Seventh and Second, reads § 1367 as a 'sweeping grant of supplemental jurisdiction,'" and holding "that a permissive counterclaim need not independently satisfy federal jurisdictional requirements[;] [i]nstead, this Court may exercise supplemental jurisdiction over the counterclaim as long as the counterclaim is part of the same 'case or controversy' as the underlying claim").

The Tenth Circuit has stated that, because permissive counterclaims do not arise from the same transaction or occurrence as the main claim, they generally do not fall within the court's supplemental jurisdiction and thus require an independent basis for federal jurisdiction.  See NLRB ex rel. Int'l Union of Elec., Radio, & Mach. Workers v. Dutch Boy, Inc. ("Dutch Boy"), 606 F.2d 929, 932 (10th Cir. 1979).  "Since Congress enacted Section 1367 in 1990, [however,] the Tenth Circuit has not determined whether supplemental jurisdiction over counterclaims depends on the compulsory/permissive distinction."  Wilhelm v. TLC Lawn Care, Inc., No. CIV 07-2465-KHV2008, 2008 WL 640733, at *1 n.1 (D. Kan. March 6, 2008)(Vratil, J.).  See Crow v. Uintah Basin Elec. Telecomms., No. 2:09-CV-1010, 2010 WL 5069852, at *4 n.30 (D. Utah Dec. 6, 2010)(Stewart, J.)(recognizing that the Tenth Circuit has not yet adopted the approach in which courts determine supplemental jurisdiction over counterclaims on the basis of whether they are compulsory or permissive).  The Tenth Circuit has recognized that § 1367(a) codified

the common nucleus of operative fact test.  See Shaw v. AAA Eng'g & Drafting Inc., 138 F. App'x 62, 70 (10th Cir. 2005).  In light of the Tenth Circuit's holding in Dutch Boy, the Court analyzes whether it has supplemental jurisdiction by determining whether the counterclaim is permissive or compulsory under rule 13 of the Federal Rules of Civil Procedure.  See Naranjo v. Cnty. of Rio Arriba, 862 F. Supp. 328, 334 (D.N.M. 1994)(Conway, J.)(concluding that, for a counterclaim to form part of the same case or controversy under § 1367(a), it must be compulsory rather than permissive); Williams v. W. Laundry Equip. LLC, 2006 WL 4061164, at *6 (D.N.M. Nov. 21, 2006)(Browning, J.)(concluding that compulsory counterclaims fall within a court's supplemental jurisdiction, while permissive counterclaims require an independent basis for jurisdiction).

### 3.       Supplemental Jurisdiction Over Counterclaims That Seek a Setoff.

The Court lacks supplemental jurisdiction to hear setoff counterclaims unless there is an independent basis for jurisdiction.   A setoff is a "defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim."   BLACK'S LAW DICTIONARY 1496 (9th ed. 2009).  It seeks to reduce the opposing party's claim; it does not seek affirmative relief.  See United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430 F.2d 1077, 1081 n.1 (2d Cir. 1970).  Because a setoff concerns a different transaction, it is by definition a permissive counterclaim.  See Fed. R. Civ. P. 13 (defining compulsory counterclaims as those which "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," and defining a permissive counterclaim as "any claim that is not compulsory"); Williams v. W. Laundry Equip. LLC, 2006 WL 4061164, at *6 ("Unlike recoupment claims, which arise from the same transaction as the principal claim, counterclaims

for setoff 'provide the basis for a permissive counterclaim because setoff, by definition, does not arise from the same transaction as the original claim.'"   (alterations omitted)(quoting In re Concept Clubs, Inc., 154 B.R. 581, 587 (D. Utah 1992)(Anderson, J.)).  "Because permissive counterclaims do not arise from the same transaction or occurrence as the main claim, however, they generally do not fall within the court's supplemental jurisdiction and thus require an independent basis for federal jurisdiction."   Williams v. W. Laundry Equip. LLC, 2006 WL 4061164, at *6.

Although counterclaims for setoff are permissive, some courts concluded -- even before Congress amended § 1367 -- that setoffs constitute an exception to the general rule that permissive counterclaims require an independent basis for federal jurisdiction.  See United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430 F.2d at 1081 n.1.  The setoff exception provides: "Where the permissive counterclaim is in the nature of a set-off interposed merely to defeat or reduce the opposing party's claim and does not seek affirmative relief, no independent jurisdictional grounds are required."   United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430 F.2d at 1081 n.1.  See Fraser v. Astra Steamship Corp., 18 F.R.D. 240, 242 (S.D.N.Y. 1955)(Herlands, J.).  The purpose of the setoff exception was to further judicial economy by allowing a court to resolve all disputes between the parties in one litigation.  See In re Concept Clubs, Inc., 154 B.R. at 586.

Since Congress passed § 1367, more courts have concluded that district courts can exercise supplemental jurisdiction over a setoff counterclaim, as long as it meets § 1367's requirements.   See Lefkovitz v. Wagner, 395 F.3d 773, 782 (7th Cir. 2005)(Posner, J.)("[J]urisdiction in such a case is possible but not automatic, because the jurisdictional issue is

governed by 28 U.S.C. § 1367."); <u>James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth</u> <u>Telecomm., Inc.</u>, 2011 WL 2448911, at *3 (M.D. Fla. March 28, 2011)(Corrigan, J.)(concluding that setoff counterclaims "need not have an independent basis of jurisdiction," as long as they meet § 1367's requirements and thus form "part of the same case or controversy"); <u>Pro Bono</u> <u>Inv., Inc. v. Gerry</u>, 2005 WL 2429787, at *12 (S.D.N.Y. Sept. 30, 2005)(Koeltl, J.)(concluding that supplemental jurisdiction exists over permissive counterclaims only when they satisfy § 1367's "case or controversy" test, regardless of whether they seek a setoff).

The United States Court of Appeals for the First Circuit has explained that the reason courts can hear some setoff counterclaims is that § 1367's jurisdictional grant is broader than rule 13(a)'s "transaction or occurrence" test. <u>See</u> <u>Global NAPs, Inc. v. Verizon New England</u> <u>Inc.</u>, 603 F.3d 71, 76-77 (1st Cir. 2010). In other words, permissive counterclaims can form part of the same "case or controversy" as the plaintiff's claim, even though they might not "arise from the same transaction or occurrence" as the plaintiff's claim. <u>Global NAPs, Inc. v. Verizon</u> <u>New England Inc.</u>, 603 F.3d at 76-77. <u>See</u> <u>Jones v. Ford Motor Credit Co.</u>, 358 F.3d at 213; <u>Channell v. Citicorp Nat'l Servs., Inc.</u>, 89 F.3d at 385; <u>Campos v. W. Dental Servs., Inc.</u>, 404 F. Supp. 2d 1164, 1167 (N.D. Cal. 2005)(Whyte, J.). "This standard is broad and fact-specific, and should be applied with a pragmatic appreciation of the efficiency promoted by supplemental jurisdiction." 13D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3567.1 (3d ed. 2015).

Section 1367's standard, however, has limits. Even courts that have endorsed exercising jurisdiction over permissive counterclaims recognize § 1367's limits. <u>See</u> <u>Jones v. Ford Motor</u> <u>Credit Co.</u>, 358 F.3d at 211 n.3 (observing that the setoff exception "does not fit squarely within

the analytic framework" now codified in § 1367, because "under the exception, all defensive set-offs, whether or not they satisfy the <u>Gibbs</u> test, are within the ancillary jurisdiction of the court"). A limitless setoff exception "would permit counterclaimants to 'plead such an affirmative defense in every case and thereby render meaningless Section 1367(a)'s limitation of supplemental jurisdiction' to only those claims forming part of the same Article III case or controversy." <u>LaChapelle v. Torres</u>, 37 F. Supp. 3d 672, 682 (S.D.N.Y. 2014)(Caproni, J.)(quoting <u>Pro Bono Inves., Inc. v. Gerry</u>, 2005 WL 2429787, at *13 & n.2). A mere causal relationship between the two claims is also not likely sufficient to confer supplemental jurisdiction. <u>See</u> <u>Salei v. Boardwalk Regency Corp.</u>, 913 F. Supp. 993, 998-99 (E.D. Mich. 1996)(Rosen, J.)(concluding that, even though the plaintiff's state-law claims caused his federal claims, they did not arise from the same set of facts); 13D WRIGHT, <u>supra</u>, at § 3567.1.

Although § 1367 may allow courts to hear some permissive counterclaims, the Court concludes that setoffs are not among them. By definition, they do not arise from the same "case or controversy," because the plaintiff's claim arises from the defendant's injurious conduct, while the setoff claim arises from the plaintiff's totally separate action of filing a complaint. 28 U.S.C. § 1367(a). <u>See</u> <u>LaChapelle v. Torres</u>, 37 F. Supp. 3d at 682. Furthermore, judicial efficiency cannot alter the outcome that § 1367's language requires. <u>See</u> <u>Jones v. Ford Motor Credit Co.</u>, 358 F.3d at 211 n.3 (observing that the setoff exception is in tension with the analytic framework now codified in § 1367); <u>Ambromovage v. United Mine Workers</u>, 726 F.2d 972, 990-92 & n.56 (3d Cir. 1984)(Becker, J.); <u>Prudential Equity Grp., LLC v. Ajamie</u>, 524 F. Supp. 2d 473, 476 (S.D.N.Y. 2007)(Rakoff, J.)(declining to apply the setoff exception and "question[ing] whether the set-off exception . . . can be reconciled with the Supreme Court's holding," in <u>United</u>

- 17 -

Mine Workers of America v. Gibbs, now codified in § 1367).

Various public policy reasons also support declining jurisdiction over setoff claims. Declining jurisdiction restricts the scope of the litigation before the court to manageable levels. See Walker v. THI of New Mexico at Hobbs Ctr., 803 F. Supp. 2d 1287, 1317 (D.N.M. 2011)(Browning, J.)(describing how exercising jurisdiction over permissive counterclaims can "create significant management problems"). Furthermore, the court does not, when it declines to exercise jurisdiction, prevent the defendant from litigating his claims; he can file them in state court. Consequently, if the Court lacks an independent jurisdictional basis to hear a setoff claim, the Court lacks jurisdiction to hear it, because it does not comply with § 1367's requirement that supplemental claims "form part of the same case or controversy under Article III of the United States Constitution" as the claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). See Saenz v. Lovington Mun. Sch. Dist., 2015 WL 2226021, at *29 (D.N.M. 2015)(Browning, J.).

**RELEVANT NEW MEXICO LAW REGARDING MALICIOUS ABUSE OF PROCESS**[5]

_____

[5]New Mexico refers to fraudulent joinder claims as "malicious abuse of process." Durham v. Guest, 145 N.M. 694, 701, 204 P.3d 19, 26 (2009). L&P Supply labels its Counterclaim "fraudulent joinder" in its Answer, but describes facts that would support a malicious abuse-of-process claim under New Mexico's notice-pleading requirements, which require only that plaintiffs allege facts sufficient to put the defendant on notice of the plaintiff's claims. See Rule 1-008(A) NMRA; Schmitz v. Smentowski, 109 N.M. 386, 389-90, 785 P.2d 726, 729-30 (1990). L&P Supply later characterized its fraudulent joinder claim as one for malicious abuse of process under New Mexico law. See Reply at 7-8. While L&P Supply's Answer could meet New Mexico's pleading standards, once the case is removed to federal court, the Court must apply the more rigorous federal pleading standards. See, e.g., Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d 1066, 1076 (D.N.M. 2011)(Browning, J); Carl Kelley Constr. LLC v. Danco Tech., 656 F. Supp. 2d 1323, 1345 (D.N.M. 2009)(Browning, J.)(applying the Federal Rules of Civil Procedure to determine whether the plaintiff adequately pled his state-law claims). Nevertheless, to be as fair as possible to L&P Supply, and because the Court does not have subject-matter jurisdiction over the claims in any case and should avoid as much as possible

In <u>DeVaney v. Thriftway Marketing Corp</u>, 124 N.M. 512, 953 P.2d 277 (1998), <u>overruled on other grounds by</u> <u>Durham v. Guest</u>, 145 N.M. 694, 204 P.3d 19 (2009), the Supreme Court of New Mexico reviewed the purposes and elements of the two torts of abuse of process and malicious prosecution.  <u>See</u> <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 517, 953 P.2d at 282.  The Supreme Court of New Mexico concluded that the two torts would no longer be separate causes of action and restated their elements into a single tort -- malicious abuse of process.  <u>See</u> <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 518, 953 P.2d at 283.  New Mexico courts state that the tort of malicious abuse of process should be construed narrowly to protect the right of access to the courts.  <u>See</u> <u>Durham v. Guest</u>, 145 N.M. at 701, 204 P.3d at 26; <u>Weststar Mortg. Corp. v. Jackson</u>, 133 N.M. 114, 119, 61 P.3d 823, 828 (2002).  Malicious-abuse-of-process claims involve balancing "the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts."  <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 517, 953 P.2d at 282.  "[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive."  <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 520, 953 P.2d at 285.

The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii)

---

making merits decisions, the Court will analyze whether it has subject matter jurisdiction over L&P's counterclaim assuming that L&P's Answer stated a cause of action for malicious abuse of process.

damages.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.  An improper use of process may be shown by: (i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.

The Supreme Court of New Mexico has defined probable cause in the malicious-abuse-of-process context as "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury." Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. 150, 154, 164 P.3d 31, 36 (2007)(internal quotations and citation omitted).  "The lack of probable cause must be manifest."  Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (citation omitted).  "Probable cause . . . is to be judged by facts as they appeared at the time, not by later-discovered facts." Weststar Mortg. Corp. v. Jackson, 133 N.M. at 122, 61 P.3d at 831.  A malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim."  DeVaney v. Thriftway Marketing Corp., 124 N.M. at 522, 953 P.2d at 287.

Lack of probable cause is not the only way to establish misuse of process; a plaintiff can also show misuse of process by pointing to "some irregularity or impropriety suggesting extortion, delay or harassment."  DeVaney v. Thriftway Marketing Corp., 124 N.M. at 522, 953 P.2d at 287.  A plaintiff may prove misuse of process through procedural irregularity -- such as misuse of discovery, subpoenas, and attachments -- or an act that otherwise indicates wrongful use of proceedings -- such as an extortion attempt.  See DeVaney v. Thriftway Mktg. Corp., 124

N.M. at 522, 953 P.2d at 287.   Some examples of misuse of process include: (i) excessive execution on a judgment; (ii) attachment of property other than the property involved in the litigation; (iii) oppressive conduct in connection with an arrest or seizure of property; and (iv) extortion of excessive sums of money.   See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

Under the requirement of a primary improper motive, it is insufficient that the malicious-abuse-of-process defendant acted with ill will or spite.   See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.   There must be a purpose to accomplish an illegitimate end. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.   The Supreme Court of New Mexico has given several examples of improper purpose, including: (i) a litigant who pursues a claim knowing that the claim is meritless; (ii) a litigant who pursues a claim primarily to deprive another of the beneficial use of his or her property in a manner unrelated to the claims' merits; (iii) a litigant who misuses the law primarily for harassment or delay; or (iv) a litigant who initiates proceedings primarily for the purpose of extortion.   See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.   An overt misuse of process may support an inference of an improper purpose, but a court may not infer from evidence of an improper purpose alone that there was not probable cause or that there was not a proper use of process. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

The Court and New Mexico courts alike have concluded that the counterclaim for malicious abuse of process is permissive.   The cause of action does "not arise until after the filing of the original complaint."   Gonzalez v. Lopez, 132 N.M. 558, 563, 52 P.3d 418, 423 (Ct. App. 2002)(citing Rule 1-013(E) NMRA).   See Walker v. THI of New Mexico at Hobbs Center,

- 21 -

803 F. Supp. 2d 1287, 1317 (D.N.M. 2011)(Browning, J.).   The Court of Appeals of New

Mexico has stated:

> We characterize the counterclaim as permissive because it arose not from
> Defendants' conduct as alleged in the complaint but from the filing of the
> complaint itself. Rule 1-013(B) (defining a permissive counterclaim as "any claim
> against an opposing party not arising out of the transaction or occurrence that is
> the subject matter of the opposing party's claim").   Rule 1-013(B) does not
> compel the district court to entertain a permissive counterclaim, and Rule
> 1-013(E) requires the district court's permission to file a counterclaim maturing or
> acquired after pleading. Thus, in either case, allowing the counterclaim was
> within the district court's discretion.  See Critical-Vac Filtration Corp. v.
> Minuteman Int'l, Inc., 233 F.3d 697, 702, 704 (2nd Cir. 2000) (discussing
> counterclaims deemed as permissive under Rule 1-013(B) as being subject to the
> court's discretion). Allowing addition of the counterclaim would complicate trial
> of the basic estate claim, require additional discovery and potentially delay an
> imminent trial. Under these circumstances, it is not an abuse of discretion by the
> district court to deny inclusion of a permissive counterclaim.

Gonzalez v. Lopez, 132 N.M. at 563-64, 52 P.2d at 423-24.   Policy reasons support this

conclusion.   The issues of fact and the issues of law that the counterclaims raise are dissimilar

"because judgment on the plaintiff's claims would not operate as res judicata in a suit for

malicious abuse of process, and because there is not a sufficient logical relation between the

claim and the counterclaim."   Walker v. THI of New Mexico at Hobbs Ctr., 803 F. Supp. 2d at

1317-18.   See Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254, 262-64 (8th Cir.

1979)(Becker, J.)(noting that the appellants' abuse-of-process claims could not have arisen out of

the plaintiff's breach-of-contract claims); Anderson v. Central Point Sch. Dist. No. 6, 554 F.

Supp. 600, 604-605 (D. Or. 1982)(Redden, J.)(finding that the abuse-of-process counterclaim

was not logically related to the plaintiff's first amendment claim).

Finally, if the federal court makes state law abuse-of-process claims compulsory, it

creates a situation where litigation in federal court invites more of these claims than the state

courts, thereby creating a different litigation scenario for litigants.  See Walker v. THI of New Mexico at Hobbs Center, 803 F. Supp. 2d at 1322.  Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), courts should discourage forum shopping and avoid inequitable administration of the laws by making litigation in federal courts as similar as possible to litigation in state courts. See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1539 (10th Cir. 1996)(encouraging courts to discourage forum-shopping and avoid inequitable administration of the laws).  "Also, a defendant in federal court -- thinking that New Mexico law applies to his or her abuse-of-process claim -- may be surprised when he or she files the claim, and finds it is barred by res judicata and rule 13's requirements."  See Walker v. THI of New Mexico at Hobbs Ctr., 803 F. Supp. 2d at 1322.  Thus, concluding that a New Mexico abuse-of-process claim is permissive facilitates similar litigation between federal and state courts.

## ANALYSIS

The Court does not have diversity jurisdiction over L&P Supply's Counterclaim because it is a state law claim between parties of the same state.  It does not have supplemental jurisdiction over the counterclaim, because D. Taylor's claims and the Counterclaim do not arise from the same common nucleus of operative fact.  There is no independent basis for federal jurisdiction to support the Counterclaim.  The Court therefore lacks subject-matter jurisdiction. Because the Court cannot properly remand the Counterclaim to state court without remanding the entire case, it dismisses L&P Supply's Counterclaim without prejudice to allow L&P Supply to raise it in state court.

## I.   THE COURT LACKS SUBJECT-MATTER JURISDICTION TO HEAR L&P SUPPLY'S COUNTERCLAIM.

L&P Supply's counterclaim for malicious abuse of process is a permissive counterclaim.

See Walker v. THI of New Mexico at Hobbs Ctr., 803 F. Supp. 2d at 1324; Gonzalez v. Lopez, 132 N.M. 558, 563, 52 P.3d 418, 423.  "[B]ecause permissive counterclaims do not arise from the same transaction or occurrence as the main claim, they generally do not fall within the court's supplemental jurisdiction and thus require an independent basis for federal jurisdiction." Walker v. THI of New Mexico at Hobbs Center, 803 F. Supp. 2d at 1299 (citing Dutch Boy, 606 F.2d at 932).  See United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430 F.2d at 1081.  L&P Supply's Counterclaim attempts to state a cause of action under New Mexico law and the parties are not diverse.  Accordingly, the Court lacks diversity jurisdiction over L&P Supply's Counterclaim.  See 28 U.S.C. § 1332(a) (requiring (i) complete diversity among the parties; and (ii) that the amount in controversy exceed $75,000).

The Court cannot properly exercise supplemental jurisdiction over L&P Supply's Counterclaim.  Supplemental jurisdiction under § 1367 exists over permissive counterclaims "only so long as they satisfy Section 1367(a)'s 'case or controversy' test." Pro Bono Inv., Inc. v. Gerry, 2005 WL 2429787, at *13 n.12.  See Oak Park Trust and Sav. Bank v. Therkildsen, 209 F.3d 648, 651 (7th Cir. 2000)(stating that permissive counterclaims do not satisfy § 1367(a)'s requirement when they are not so related to the jurisdiction-invoking claim as to be part of the same case or controversy under Article III of the Constitution of the United States); Frisby v. Keith D. Weiner & Assocs. Co., 669 F. Supp. 2d at 872 (holding that courts may exercise supplemental jurisdiction over the counterclaim as long as the counterclaim is part of the same "case or controversy" as the underlying claim).

D. Taylor's underlying claim arises out of L&P Supply's alleged production of asbestos that harmed M. Taylor.  See Complaint ¶¶ 32-37, at 8-11.  L&P Supply's Counterclaim arises

- 24 -

out of D. Taylor's actions in filing the Complaint and the Amended Complaint, and her actions in the litigation.  See State Motion for Default Judgment at 1.  The cause of action for malicious abuse of process does "not arise until after the filing of the original complaint."  Gonzalez v. Lopez, 132 N.M. 558, 563.  The Counterclaim arises "not from Defendants' conduct as alleged in the complaint but from the filing of the complaint itself."  Gonzalez v. Lopez, 132 N.M. at 563-64, 52 P.2d at 423-24.  Consequently, L&P Supply's Counterclaim does not share a common nucleus of operative facts with D. Taylor's underlying claims.  See Walker v. THI of New Mexico at Hobbs Center, 803 F. Supp. 2d at 1324 (concluding that the defendant's malicious abuse-of-process counterclaim did not arise from the same nucleus of operative facts as the plaintiff's underlying claims); Tr. at 9:20-21 (Court)(stating that the "nucleus of operative facts are not related in time, space, or origin"); In re Colonial Mortg. Bankers Corp., 228 B.R. 516 (1st Cir. 1999)(stating that, when determining whether claims derive from the same nucleus of operative facts, a court should consider whether the facts are related in time, space, origin or motivation).  Because the underlying claims and the Counterclaim do not share a common nucleus of operative facts, § 1367 does not provide the Court with supplemental jurisdiction to hear the state-law claim.  See Walker v. THI of New Mexico at Hobbs Ctr., 803 F. Supp. 2d at 1316.

## II.    THE COURT CANNOT PROPERLY REMAND L&P SUPPLY'S COUNTERCLAIM, SO IT WILL DISMISS IT WITHOUT PREJUDICE.

When a case is before the Court on a diversity of citizenship basis, the Court cannot partially remand certain claims without remanding the entire case.  See Bohanna v. Hartford Life & Accident Ins. Co., 848 F. Supp. 2d 1009, 1013 (W.D. Mo. 2012)(Whipple, J.)("[P]iecemeal remand of certain claims is inappropriate when removal jurisdiction is based on

diversity."); RK Dixon Co. v. Dealer Mktg. Servs., 284 F. Supp. 2d 1204, 1212-13 (S.D. Iowa 2003)(Gritzner, J.)(concluding that "a federal court cannot resort to a partial remand of an action that is properly before the court on diversity jurisdiction"); Bristol-Myers Squibb Co. v. Safety Nat'l Cas. Corp., 43 F. Supp. 2d 734, 743-44 (E.D. Tex. 1999)(Heartfield, J.)(concluding that, in diversity of citizenship cases, courts cannot remand certain claims while retaining jurisdiction over the remaining claims).  Without supplemental jurisdiction, federal statutes authorize partial remand of state-law claims only from a civil action where a federal question claim is joined to a state-law claim over which the court lacks subject-matter jurisdiction.  See 28 U.S.C. § 1441(c);[6] Sheet Metal Workers Int'l Ass'n v. Seay, 696 F.2d 780, 781-82 (10th Cir. 1983); Bristol-Myers Squibb Co. v. Safety Nat'l Cas. Corp., 43 F. Supp. 2d at 743-44 ("[A]uthority for piecemeal or partial remand exists only when removal jurisdiction is based on existence of a federal question.

---

[6]The general removal statute, 28 U.S.C. § 1441(c) reads:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c) (emphasis added).  28 U.S.C. § 1331 is the general federal-question statute. The 1990 amendment to 28 U.S.C. § 1441(c) made it inapplicable to cases founded on § 1332 diversity jurisdiction.  See Riverside Transp., Inc. v. Bellsouth Telecomm., Inc., 847 F. Supp. 453, 457 (M.D. La. 1994)(Polozola, J.)("The 1990 amendment to 1441(c) rendered it inapplicable to diversity cases."); Baylor v. Dist. Of Columbia, 838 F. Supp. 7, 9 (D.D.C. 1993)(discussing the language of section 1441(c) and the effect of the 1990 amendment on this section); 14B CHARLES ALAN WRIGHT, ARTHUR MILLER & EDWARD COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3722.3, at 8-9 (4th ed. 2015)("Thus, the amendment eliminated the use of claims within diversity jurisdiction as the basis for removing claims under Section 1441(c).").  Wright, supra, cites cases indicating that courts cannot "effect a partial remand under 28 U.S.C.A. § 1441(c)" in diversity cases.  See id. § 3722.3 n.18 ("[B]ecause [the] 1990 revision of § 1441(c) excludes diversity cases, court had to remand entire action when some members of class action did not meet amount in controversy requirement.").

[The defendant] does not cite, and the court's independent research fails to disclose authority for a partial remand in actions based on diversity."); <u>Riverside Transp., Inc. v. Bellsouth Telecomm., Inc.</u>, 847 F. Supp. 453, 457 (M.D. La. 1994)(Polozola, J.)(remanding the entire case to state court because it could "no longer divide claims where the Court's jurisdiction is based on § 1332").

Here, the parties bring no federal questions before the Court. The Court has subject matter jurisdiction based on diversity of citizenship. Accordingly, 28 U.S.C. § 1441(c) does not allow the Court to remand L&P Supply's state law counterclaim while retaining the case. The Federal Rules of Civil Procedure require federal courts to dismiss actions over which they lack subject matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(h)(3). Pursuant to the federal rules, the Court therefore dismisses L&P Supply's state law Counterclaim without prejudice.

**IT IS ORDERED** that L&P Building Supply of Las Cruces Inc.'s Motion for Default or Rule 1-102(C) Motion for Judgment on the Pleadings or in the Alternative Summary Judgment and for Counterclaim Damages, and Motion for Summary Judgment Against Plaintiffs and Dismissal, filed in state court October 30, 2014, filed in federal court November 19, 2014 (Doc. 19-14)("State Motion for Default Judgment"), and L&P Building Supply of Las Cruces Inc.'s Motion for Default Judgment on Counterclaims [Doc. 19-5] of Wrongful Joinder, filed January 13, 2015 (Doc. 56), are denied. The claims in Defendant L&P Supply of Las Cruces, Inc.'s Counterclaims in L&P Building Supply of Las Cruces Inc.'s Answer to Plaintiffs' First Amended Complaint & Counterclaims at 1, filed in federal court November 19, 2014 (Doc. 19-5), and in the State Motion for Default Judgment, are dismissed without prejudice.

- 27 -

UNITED STATES DISTRICT JUDGE

*Counsel*:

Zackeree S. Kelin
Albuquerque, New Mexico

--and--

Jeffrey A. Kaiser
Joshua O. Reed
Kaiser Gornick LLP
Walnut Creek, California

       *Attorneys for the Plaintiffs*

Gilbert Houston Frith
Trace L. Rabern
The Frith Firm
Santa Fe, New Mexico

       *Attorneys for Defendant L&P Building Supply of Las Cruces, Inc.*

Spencer L. Edelman
Michelle A. Hernandez
Modrall Sperling Roehl Harris & Sisk, PA
Albuquerque, New Mexico

--and--

Mary Price Birk
Ronald L. Hellbusch
Baker & Hostetler, LLP
Denver, Colorado

       *Attorneys for Defendant Certainteed Corporation*

Tonn K. Petersen
Perkins Coie LLP
Boise, Idaho

*Attorneys for Defendants Georgia Pacific Corporation and Honeywell International, Inc.*